1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                          **CENTRAL DISTRICT OF CALIFORNIA**

9

10   CLAIRE ROBLEY,                      )     NO. CV 03-8365(Mc)
                                         )
11                    Plaintiff,         )
                                         )     MEMORANDUM OF DECISION
12           v.                          )     AND ORDER IN A SOCIAL
                                         )     SECURITY CASE
13   JO ANNE B. BARNHART,                )
     Commissioner of the                 )
14   Social Security Administration,     )
                                         )
15                    Defendant.         )
                                         )
16   _____)

17        The plaintiff, CLAIRE ROBLEY, filed the present action for review

18   of a final determination of the Commissioner of Social Security (the

19   "Commissioner") that the plaintiff is not disabled and not entitled to

20   benefits.  For the foregoing reasons, this court finds that the

21   Commissioner's decision that the plaintiff is not disabled is based

22   upon substantial evidence.  The Commissioner's decision, therefore, is

23   affirmed.

24                              **BACKGROUND**

25        The plaintiff filed an application for Disability Insurance

26   Benefits under the Social Security Act (the "Act") on June 15, 1999.

27   [Administrative Record ("AR") 60-62.]  The Commissioner denied the

28   application initially and on reconsideration.  [AR 47-50, 52-56.]  At

1  the plaintiff's request, an administrative hearing was held before
2  Administrative Law Judge Jan Donsbach (the "ALJ") on August 28, 2000.
3  [AR 32-44.]   On September 26, 2000, the ALJ filed a decision
4  concluding that the plaintiff was not under a disability as defined in
5  the Act at any time through the date of the decision.   [AR 22-26.]
6  The Appeals Council denied the plaintiff's request for review of the
7  ALJ's decision.   [AR 5-9.]   The decision of the ALJ stands as the
8  final decision of the Commissioner.

9      Thereafter, the plaintiff filed the present action.   The
10  plaintiff and the Commissioner have consented to proceed before a
11  United States Magistrate Judge.   The parties have entered into a Joint
12  Stipulation setting forth their arguments.

13                          **STANDARDS OF REVIEW**

14      The court must sustain the findings of the Commissioner unless:
15  (a) they are not supported by substantial evidence in the record as a
16  whole; or (b) the Commissioner applied an improper legal standard.
17  See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human
18  Services, 803 F.2d 1071, 1072 (9th Cir. 1986).   Substantial evidence
19  means "more than a mere scintilla" but less than a preponderance.
20  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28
21  L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human
22  Services, 846 F.2d 573, 576 (9th Cir. 1988).   "Substantial evidence"
23  is evidence a "reasonable mind might accept as adequate to support a
24  conclusion."   Richardson v. Perales, 402 U.S. at 402; Gordon v.
25  Secretary of Health and Human Services, 803 F.2d at 1072.

26      This court must review the record as a whole and consider adverse
27  as well as supporting evidence.   See Green v. Heckler, 803 F.2d 528,
28  529-30 (9th Cir. 1986).   Where evidence is susceptible of more than

one rational interpretation, the court must sustain the Commissioner's decision.  See <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).

### THE FIVE-STEP SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, the Commissioner determines whether the person is engaged in "substantial gainful activity."  If so, the Commissioner denies disability benefits.  Second, if the person is not so engaged, the Commissioner determines whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, the Commissioner denies benefits.  Third, if the person has a severe impairment, the Commissioner determines whether the impairment meets or equals one of a number of "listed impairments."  If the impairment meets or equals a "listed impairment," the Commissioner conclusively presumes that the person is disabled.  Fourth, if the impairment does not meet or equal the "listed impairments," the Commissioner determines whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, the Commissioner denies benefits.  Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to disability benefits only if he or she is unable to perform other work.  See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

///

///

**FINDINGS OF THE ALJ**

The plaintiff was born September 20, 1937. [AR 60.]  The plaintiff has an eleventh grade education [AR 23, 86] and past relevant work experience as a food server [AR 23, 36, 81].  The plaintiff alleges that she has been unable to work since March 13, 1999, because of arthritis and rib fractures.  [AR 80.]  The plaintiff also alleges depression.  [Joint Stipulation at 13.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  The ALJ found that the plaintiff had osteoporosis and mild, stable arthritis.  The ALJ found, however, that the plaintiff did not have an impairment or combination of impairments that significantly limited the plaintiff's ability to perform basic-work related activities.  Therefore, the ALJ concluded that the plaintiff did not have a "severe" impairment and that the plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of his decision.  [AR 25-26.]

**THE PLAINTIFF'S CONTENTIONS**

The plaintiff contends that the ALJ erred by improperly weighing the treating physician's evidence in determining that the plaintiff's arthritis and osteoporosis and mental impairment are non-severe.

**The plaintiff's mental impairment**

_____The opinion of a treating physician is generally entitled to greater weight than the opinions of a physician who has examined, but not treated the claimant.  This is so because the treating physician is employed to cure and has a greater opportunity to know and observe his patient than a physician who only saw the claimant on one occasion.  The opinion of an examining physician, in turn, is

generally entitled to greater weight than the opinions of a physician who has not examined the claimant. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). This is not to say, however, that the opinion of even a treating physician is "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989). If, for example, the opinion of a treating physician is rejected in favor of that of a non-treating physician, and the opinion of the non-treating physician is based upon independent clinical findings, the opinion of the non-treating physician can constitute substantial evidence. It is then for the ALJ to resolve the conflict. Andrews, 53 F. 3d at 1041. If, on the other hand, the opinion of the non-treating physician is based upon the same clinical findings considered by the treating physician, the ALJ must cite specific and legitimate reasons for rejecting the treating physician's opinion. Id.

        The plaintiff notes that on two separate occasions in October and December, 1999,[1] the plaintiff's treating internist, Dr. Kurene Mao, diagnosed depression. The plaintiff concedes that Dr. Mao's evidence concerning the depression is sparse, but argues that the treatment notes were augmented by two questionnaires completed by Dr. Mao in February, 2000, and August, 2000. On the first occasion, Dr. Mao wrote that the plaintiff was unable to tolerate even a low stress job "(emotional and physical)." [Joint Stipulation at 13-14; AR 160.] In the second questionnaire, Dr. Mao reiterated that the plaintiff

---

        [1] The ALJ erred in stating that there was only one mention of depression. [AR 25.] At the time of the ALJ's decision, there were two references to depression. [Joint Stipulation at 13; AR 164, 166.]

suffered from depression and indicated that the plaintiff contemplated suicide but had no plans.  Dr. Mao again stated that the plaintiff would be unable to tolerate even a low stress job.  [AR 194.]  The plaintiff contends that there is no medical evidence to contradict Dr. Mao's findings or opinions [Joint Stipulation at 14] and argues that Dr. Mao's opinion "constitutes compelling contemporaneous treating source evidence of a mental impairment which, if granted the credence it deserves, would certainly warrant carrying the analysis of the mental impairment beyond the minimal threshold at step two." [Joint Stipulation at 14.]

However, the ALJ did not just find that the plaintiff's depression was non-severe.  He found that the plaintiff failed to prove that the plaintiff even had a medically determinable mental impairment.  [AR 25.]

A medically determinable impairment is an impairment which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.... A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [one's] statement of symptoms...." 20 C.F.R. § 404.1508.  In the case of mental impairments, "signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated."  20 C.F.R. § 404.1528(b).  Laboratory findings include psychological tests.  20 C.F.R. § 404.1528(c).

///

1      Asserted symptoms of lack of sleep, difficulties concentrating,

2  and suicidal thoughts notwithstanding,[2] the ALJ did not find that the

3  plaintiff suffered from a medically determinable mental impairment,

4  and the plaintiff has not indicated what signs and clinical or

5  laboratory findings prove otherwise.  A few scattered references to

6  depression do not meet the criteria.

7      Moreover, to the extent that Dr. Mao's references to depression

8  can be inferred as a diagnosis of a medically determinable impairment,

9  the ALJ cited specific clear and convincing reasons for rejecting such

10  an inference.[3]  For example, the ALJ noted that the plaintiff herself

11  never sought psychiatric help.  [AR 24-25.]  In fact, as noted by the

12  defendant, the plaintiff, who was represented at the hearing, did not

13  even complain of depression at the time of the hearing, focusing

14  instead on her physical complaints.  [See Joint Stipulation at 16.]

15      The ALJ noted further that the treatment records failed to

16  indicate signs of depression with any regularity, and he observed that

17

18      [2] This court notes that the treatment record does not reveal

19  ongoing complaints of lack of sleep.  When the plaintiff did complain
of lack of sleep, she was not taking any medication, including for

20  pain, and she apparently attributed her lack of sleep not to emotional
complaints but to pain.  [See AR 182.]  There are no complaints

21  regarding loss of the ability to concentrate.  The treatment notes
indicate that despite complaints of depression, contrary to Dr. Mao's

22  assertions, the plaintiff denied suicidal thoughts.  [AR 166; see also

23  AR 206 submitted to the Appeals Council.]

24      [3] The ALJ also rejected Dr. Mao's diagnosis of depression because
Dr. Mao was not a psychiatrist.  [AR 25.]  This is not a sufficient

25  reason for disregarding Dr. Mao's diagnosis.  Sprague v. Bowen, 812
F.2d 1226, 1231-32 (9th Cir. 1987)(finding that the opinions of

26  primary care physicians can constitute acceptable medical evidence of
a psychiatric impairment, recognizing that "it is well established

27  that primary care physicians (those in family or general practice)
'identify and treat the majority of Americans' psychiatric

28  disorders'").  (Internal citations omitted.)

1  Dr. Mao did not prescribe any medication or refer the plaintiff for
2  formal psychiatric care.  [AR 25.]  The plaintiff, on the other hand,
3  contends that Dr. Mao had in fact referred the plaintiff to an "M.D."
4  in December, 1999, for further evaluation of the plaintiff's
5  depression, citing AR 164.  [Joint Stipulation at 14.]  However, even
6  if true,[4] the mere references to depression are infrequent and
7  unaccompanied by any findings or indication of the need for
8  medication.  [AR 206; see also AR 193.]

9      In fact, in the later questionnaire completed by Dr. Mao, despite
10 references to depression secondary to chronic pain [AR 194], Dr. Mao
11 did not list depression as a diagnosis, he did not list any clinical
12 findings of depression [AR 189], he did not provide the basis for his
13 conclusion that the plaintiff was unable to tolerate even low stress
14 [AR 194], and he did not indicate that there were any psychological
15 limitations.  [AR 195.]

16     Therefore, the scattered and infrequent references to depression,
17 without specific signs or clinical findings or apparent need for
18 treatment, and even Dr. Mao's own responses to the last questionnaire,
19 do not suggest that the plaintiff has a medically determinable
20 psychiatric impairment.  Thus, the ALJ's finding is based upon
21 substantial evidence.

22 ///

23 ///

24

25     [4] Although the defendant does not disagree that a "referral" was
26 mentioned [Joint Stipulation at 16], it is not at all clear that Dr.
   Mao in fact made such a referral.  As noted by the defendant, the
27 December, 1999, hand-written entry is not very clear, and what was
   interpreted as "referral M.D." looks more like "refusing meds."  [AR
28 164; see also AR 206.]

**The plaintiff's osteoporosis and arthritis**

The plaintiff began treating with Dr. Mao on December 15, 1998, and has seen Dr. Mao on a regular monthly basis since then. [AR 157, 189.]  As indicated, Dr. Mao, who is an internist, completed various questionnaires on the plaintiff's behalf.  In these questionnaires, Dr. Mao indicated that the plaintiff is severely incapacitated.  Dr. Mao assessed that the plaintiff's level of pain was between 8-9 on a scale of 0-10, 10 being the most severe.  [AR 191.]  Dr. Mao opined that the plaintiff could not even sit more than one hour total in an eight-hour day.  [AR 158, 191.]  He further assessed that the plaintiff could stand/walk no more than one hour total in an eight-hour day.  [AR 159, 191.]  The plaintiff could only occasionally lift or carry up to five pounds [AR 159, 192], and the plaintiff would have to lie down every hour for an hour each time [AR 161].  Dr. Mao estimated that the plaintiff would be absent from work more than three times a month.  [Id.]  Dr. Mao further opined that the plaintiff would have marked limitations in essentially all upper extremity use.  [AR 192-93.]

The ALJ rejected this opinion, however, finding instead that the plaintiff did not have a "severe" impairment.

A severe impairment is one which does not significantly–i.e., more than minimally–affect an individual's ability to perform basic work-related activities.  20 C.F.R. § 404.1521; Bowen v. Yuckert, 482 U.S. 137, 154, 107 S.Ct. 2287, 96 L.Ed 2d 119 (1987).  This step-two inquiry is "'a de minimis screening device to dispose of groundless claims.'"  Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001), citing Smolen v.Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) and Bowen v. Yuckert, 482 U.S. at 153-54.

In finding that the plaintiff's impairment was not severe, the ALJ relied upon the consultative report of Dr. Nick Lee, who found that "[a]ll the joints have full range of motion, no effusion or inflammation."  Likewise, there was no evidence of synovitis in the DIP joints, gait was normal, and strength was 5/5 in all extremities. Dr. Lee also noted adequate movement in all joints, and examination of the neck and back revealed no limitations, although the plaintiff "resisted" portions of the examination.  [AR 152.]  Dr. Lee diagnosed mild, stable arthritis, and, contrasting sharply with Dr. Mao's assessment, Dr. Lee found no restrictions.  [Id.]  Inasmuch as Dr. Lee's examination is based upon his own independent clinical findings which differ from those cited by Dr. Mao, Dr. Lee's report can constitute substantial evidence.  It is then the province of the ALJ to resolve the conflict.  Andrews, 53 F. 3d at 1041.

Nevertheless, the plaintiff argues that it is error for the ALJ to rely upon the findings of a one-time examiner over those of a treating physician who has seen and treated the plaintiff numerous times.  Clearly, if Dr. Mao's assessment were given credence, the plaintiff not only has a severe impairment, she is, as observed by the ALJ, in "essentially an invalid status." [AR 24.]  However, the ALJ rejected Dr. Mao's assessment of the plaintiff's limitations, citing specific and legitimate reasons for doing so.

First, the ALJ noted that the findings do not support such extreme limitations.  The ALJ need not accept the opinion of any physician, including that of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

///

1   As support for his conclusions, Dr. Mao cited a bone density scan
2   consistent with severe osteoporosis and x-rays which purportedly
3   revealed multiple rib fractures and degenerative changes in the right
4   wrist.  [AR 189.]
5   However, as noted by the ALJ, despite findings of severe
6   osteoporosis, there are no clinical manifestations indicating any
7   significant limitations.  [AR 24.]
8   As to the x-rays cited by Dr. Mao, the radiology reports
9   themselves are not part of the record, but chest x-rays taken in 1996
10  revealed calcified and irregularly healed rib fracture.  [AR 108.]
11  Mao indicated in April, 1999, that the plaintiff had a recent rib
12  fracture [AR 171].  However, four months earlier, on December 14,
13  1998, the plaintiff apparently told someone at the Medical Institute
14  of Little Company of Mary that her ribs were broken in 1976 and 1983.
15  [AR 185].  As noted by the ALJ, "there is nothing to confirm that
16  these [fractures] have been recent." {AR 24; see also AR 42.]  The ALJ
17  further observed that the fractures that the plaintiff sustained in
18  the 1970's "had still allowed her to work for a number of years."  [AR
19  24.]  See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001)(In
20  finding that the ALJ did not err in failing to include, inter alia,
21  the residuals of a gunshot wound to the left upper extremity in his
22  hypothetical to the vocational expert, the Court noted that Osenbrock
23  worked for approximately six years after the gunshot injury).
24  Dr. Mao also listed findings of tenderness of the bilateral
25  wrists, shoulders and posterior left ribs as support for his
26  conclusions.  [AR 189.]  The ALJ found that such clinical findings
27  were more subjective than objective.  [AR 24.]  The plaintiff,
28  however, apparently disputes the ALJ's determination that such

findings as tenderness are "subjective" more than "objective," arguing that the ALJ "as a layman in medical matters cannot opine on such issues without the benefit of expert medical opinion." [Joint Stipulation at 9.]  However, contrary to the plaintiff's argument, tenderness has been recognized as being quite subjective in nature. See Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (describing the fibromyalgia tender spots as "entirely subjective"); see also Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1067 (9th Cir. 1999); Dyszel v. Marks, 6 F.3d 116, 130 n.25 (3d Cir. 1993).  Edwards v. Sullivan, 985 F.2d 334, 337 (7th Cir. 1993).  Even if tenderness is considered an objective finding, findings of tenderness certainly do not indicate the severe degree of limitations assessed by Dr. Mao.

As further support for his rejection of Dr. Mao's opinion, the ALJ also noted that the relatively minor treatment Dr. Mao prescribed was inconsistent with the extreme limitations Dr. Mao assessed.[5]  The plaintiff, however, argues that the ALJ may not interject his own opinion concerning the type of treatment which should have been provided to the plaintiff. [Joint Stipulation at 9.]  However, the inconsistency between the conservative nature of treatment which was prescribed and allegations of severe, disabling pain is a legitimate consideration in assessing the treating physician's opinion.  See Johnson v. Shalala, 60 F.3d 1428, 1433 n.3 (9th Cir. 1995)(agreeing with the ALJ that the treating physician's opinion of disability was

---

[5] The ALJ also found that the limitations assessed by Dr. Mao were actually more restrictive than what the plaintiff herself had indicated in her testimony.  [AR 24.]  However, it is not entirely clear that this is so. [See AR 37-38.]

not substantiated by medical evidence which included the physician's own report in which the physician "prescribed only 'conservative' care").

The plaintiff also asserts that the rejection of Dr. Mao's opinion fails adequately to consider the subjective aspects of the physician's opinion.  [Joint Stipulation at 9.]  <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 762 (9th Cir. 1989).  Nevertheless, despite the extreme limitations assessed by Dr. Mao, nowhere in his treatment notes does he indicate the reasons why the plaintiff would be limited to only one hour a day sitting and one hour a day standing/walking or why the plaintiff would be markedly limited in–i.e., essentially precluded from–her ability to grasp objects, use her fingers or hands for fine manipulation, or use her arms for reaching.  Nor is there any indication in the record that Dr. Mao ever told the plaintiff that she should avoid such activities.  <u>Connett</u>, 340 F.3d at 875.  Moreover, on those occasions when Dr. Mao commented on the plaintiff's level of distress, Dr. Mao's subjective observations indicated either that the plaintiff was in no acute distress or that the distress was "mild." [AR 172, 179, 182, 184.]

Accordingly, in citing the lack of findings, the lack of evidence supporting a recent rib fracture or reliance upon fractures that took place in 1976 and 1983 which did not preclude the plaintiff from working, and the conservative nature of treatment which contrasts sharply with the extreme limitations assessed, the ALJ provided sufficiently specific and legitimate reasons based upon substantial evidence for disregarding the assessment of Dr. Mao.

///

///

1

## **CONCLUSION**

2 _____After careful consideration of the complaint, Joint Stipulation

3 of the parties, the transcript of the record, and in accordance with

4 the foregoing discussion, the magistrate judge finds that the decision

5 of the Commissioner is supported by substantial evidence and that the

6 Commissioner applied the proper legal standards.

7

## **ORDER**

8 IT IS ORDERED that judgment be entered in favor of the

9 Commissioner and against the plaintiff.

10

11 Dated:   August __2___, 2005

12

13 _____/s/_____

14 JAMES W. McMAHON
   United States Magistrate Judge

15

16 _____

17 _____

18

19

20

21

22

23

24

25

26

27

28